In re DOVER'S LANDING, INC., d/b/a Dover's Landing Restaurant and Seafox Lounge, f/k/a Tallahassee Seafox, Inc., Debtor.

No. 81–07021.

United States Bankruptcy Court,
N. D. Florida,
Tallahassee Division.

Oct. 23, 1981.

John S. Miller, Jr., Tallahassee, Fla., trustee.

C. Edwin Rude, Jr., Tallahassee, Fla., for Recuperos.

Wm. M. Smith, Tallahassee, Fla., for First Nat. Bank.

ORDER ON APPLICATION TO DETERMINE SECURITY INTEREST

N. SANDERS SAULS, Bankruptcy Judge.

THIS CAUSE came on to be heard and considered upon the application to determine security interests and the court having considered the pleadings, the argument of counsel, the memoranda filed and being otherwise fully advised in the premises finds and concludes as follows:

The Recuperos are the owners and holders of a first mortgage upon the land and building heretofore operated as a restaurant. Their mortgage also encumbers all of the "building equipment" and articles of personal property of every kind and nature used in connection with the occupancy and operation of a restaurant as specifically set forth in great detail in the aforesaid mortgage. As specifically provided in the mortgage all of the equipment and personalty used and to be used in the future in connection with the operation of the restaurant was conclusively deemed to be a part of the realty as expressly set forth in the mortgage.

The aforesaid Recupero mortgage was subordinated to the mortgage held by the First National Bank solely with respect to the equipment and other items of personal property and all fixtures (except for air conditioning, heating and plumbing equipment or fixtures) "used in connection with and/or now or hereafter located in, on or upon the restaurant facility". As a result, the First National Bank holds a first mortgage upon all of the fixtures and items of personal property deemed to be a part of the realty as expressly provided in the subordination of mortgage executed by the Recuperos and recorded with the first mortgage of the bank.

The Recupero mortgage itemizes in great detail a host of fixtures and articles of personal property used in connection with the operation of a restaurant which they sold and in connection therewith received a purchase money first mortgage. As aforestated all of such fixtures and articles of personalty were deemed conclusively to be a part of the realty. The subordination of mortgage agreement made specific reference to the Recupero first mortgage with respect to the fixtures and personal property situated upon the realty. It declared an intent that the bank have a first mortgage upon all of the equipment and other items of personal property and fixtures used in connection with the operation of the restaurant except for the air conditioning, heating and plumbing equipment or fixtures. In addition, the recorded mortgage of the bank

encumbered "all fixtures, chattels and articles of personal property now or hereafter affixed to or used in connection with said premises . . .".

The restaurant, land, building, equipment, fixtures and personalty, deemed to be fixtures and thus part of the realty, were sold by the Recuperos to Neff-Harmon, Inc. In connection with the sale the aforesaid Recupero first mortgage was obtained and recorded and the subordination and mortgage of the bank was also obtained and recorded. Thereafter the restaurant and premises were purchased by Seafox, Inc. Seafox, Inc. purchased subject to the Recupero mortgage which it expressly assumed and agreed to pay. It also purchased subject to the first mortgage of the First National Bank but did not assume any personal liability for the underlying obligation to the bank. Thereafter, Seafox, Inc. underwent a change of name by appropriate amendment to become Dover's Landing, Inc.

The trustee is the successor in interest to Dover's Landing, Inc. and in these proceedings claims the right and title to all furniture and equipment acquired by Dover's Landing, Inc. subsequent to the purchase by its predecessor, Seafox, Inc., from Neff-Harmon, Inc. It is maintained that although both the Recupero mortgage and First National Bank mortgage contain after-acquired property clauses, the lien of the First National Bank does not encumber any articles or furnishings acquired subsequently by Dover's Landing, Inc., or its predecessor Seafox, Inc., and placed upon and used in connection with the operation of the premises.

It is asserted that the purchase from Neff-Harmon, Inc. was merely subject to the mortgage of the bank and thus there was no agreement or privity between the subsequent purchaser and the bank so as to give any effect to the after-acquired clause in the bank's mortgage.

■ With respect to a security agreement and financing statement that the bank, in addition to its real estate mort-

gage, obtained and filed with respect to the sale by Recuperos to the prior owner, Neff-Harmon, Inc., this argument seems to have merit. Under the Uniform Commercial Code, as adopted in Florida, there must be an express agreement to create a debtor-secured party relationship. "Security interest" is defined in Section 671.1–201(37), Florida Statutes, as "an interest in personal property or fixtures which secures payment or performance of an obligation." The Code deals only with transactions in which the parties intend to create security interests by contract. Section 679.9–102 states this concept in three ways. In addition, § 679.9–204 says the same thing in another way. It declares that there is no security interest that can attach until there is agreement to that effect. Accordingly, under the Code, where personal property is sold subject merely to an outstanding security interest without a new agreement by the new owner as to the security, any after-acquired property clause in the security agreement and financing statement does not have continuing vitality and is limited to the specific property sold and acquired by the purchaser to which the prior security agreement has attached and any replacement of such property, as distinguished from any non-replacement, additional personalty thereafter acquired by the purchaser.

However, it appears that the controlling law with respect to the instant situation is not Florida's Uniform Commercial Code, but the general law of the State of Florida which determines when chattels become realty by affixation. This is made clear in § 679.9–313, Florida Statutes, wherein it is stated that: "[t]he law of this state other than this code determines whether and when other goods become fixtures. This code does not prevent creation of an encumbrance upon fixtures or real estate pursuant to the law applicable to real estate." See also, § 679.9–104(10), Florida Statutes; 1 Boyer, *Florida Real Estate Transactions*, § 4.10[2].

■ Under Florida law articles which are normally and usually considered chattels or personalty may be deemed to constitute fixtures or part of the real estate where such is intended, the articles are annexed, either actually or constructively, and the articles are peculiarly adapted to the use or purpose to which the realty to which they are connected is appropriated. See, 27 Fla.Jur.2d, *Fixtures*, § 2, et seq.

As stated in 27 Fla.Jur.2d, *Fixtures*, § 12: " . . . . Where the annexation of chattels to land is made under such circumstances as to stamp them with the attributes of fixtures, it makes no difference that such annexation is made subsequently to the execution of a mortgage; *as between the mortgagor and mortgagee and persons with notice*, they become subject to the lien of the mortgage, even though not mentioned therein. The fact that the chattels annexed are what are commonly known as trade fixtures does not affect the right of the mortgagee to them, as part of his security . . . ." [emp. supplied.]

As also stated in 59 C.J.S., *Mortgages*, § 190:

"Effect is accorded a manifested intention of the parties that a mortgage of a hotel or apartment building shall cover the entire establishment, furnished and equipped as a unit, or that it shall cover articles of personal property used in connection with the premises, even though they are not a part of the realty by the fixation and are not acquired until after the execution of the mortgage."

From the mortgages and subordination agreement which were duly recorded with respect to the subject property herein, it is apparent that all articles of equipment and furnishings used in connection with the restaurant premises were to be treated as fixtures and considered as part of the realty even though not affixed with that degree of permanence or substantial affixation usually attendant and characteristic of chattels usually regarded without question as being fixtures.

■ If one who has bought the interest of a mortgagor in land attaches to such

land a chattel which he owns, the question whether such chattel is subject to the mortgage is determined by the same rule that applies to articles annexed by the mortgagor. 27 Fla.Jur.2d, *Fixtures*, § 13; *Greenwald v. Graham*, 100 Fla. 818, 130 So. 608 (Fla.1930).

As pointed out in the *Greenwald* case, *supra*, the general course of modern decisions is against the common law doctrine that the mode of annexation is the criterion, whether slight and temporary, or immovable and permanent, and in favor of declaring all things to be fixtures which are attached to the realty with a view to the purposes for which it is held or employed. The mortgage involved in the *Greenwald* case contained no specific itemizations or designations as to what would constitute articles of personalty as fixtures so as to be encumbered by the mortgage. Hence, the general law as to when chattels become fixtures and thus become encumbered by the prior existing mortgage was applied. As stated by the court, 130 So. at p. 640:

" . . . The owner of the premises bought the property covered by the mortgage from the original mortgagors which would place the owner in the same position as to added improvements as the mortgagors, with reference to the issues here raised.

If one who has bought the interest of a mortgagor in land attaches to it a chattel which he owns, the question whether this is subject to the mortgage is determined by the same rule that applies to articles annexed by the mortgagor. 41 A.L.R. 616."

█ In the instant case, the mortgage instruments designated with great particularity right down to and including silverware that all furnishings and equipment whether existing or after-acquired were to be deemed as part of the mortgage realty and subject to the mortgage lien. Since the subsequent purchaser took with notice of the prior recorded mortgages and their terms and provisions, such purchaser was with notice and chargeable with the express terms of the mortgage provisions regarding the encumbrance of future acquired property, irrespective of its usual and ordinary nature, placed upon and used in connection with the operation of the premises.

It makes no difference that an express assumption of personal liability was made with respect to the debt obligation secured by one of the mortgages while the underlying debt obligation secured by the other was not so assumed. An assumption with respect to a mortgage merely creates a personal liability to suit on the underlying debt obligation independent of any enforcement of the mortgage lien. It adds nothing to the reach and effect of the lien upon the encumbered property. The provisions of a recorded mortgage are operative without respect to whether or not there has been any assumption. Otherwise, one might argue, for example, that a mortgage provision providing that future taxes are to be paid would not be applicable as to a purchaser who purchased merely subject to the mortgage but without any assumption of the mortgaged debt.

Under Florida's mortgage and fixture law, the subsequent purchaser's placement of additional furnishings and equipment upon the subject property for use in connection with its operation subjected such articles to the liens of both of the recorded mortgages. Charged with notice and knowledge of these express provisions regarding such property, such purchaser cannot argue any contrary intention. The Trustee, as successor to such purchasers, and in his capacity as a subsequent lien creditor, as well, is likewise bound by the notice contained in the public recording records and thus acquires no superior position to the mortgagees.

Although not factually in point, a case somewhat similar to the instant case and involving Florida's law concerning fixtures and mortgages is the case of *White v. Murtha*, 343 F.2d 831 (5th Cir. 1965). In this case the Fifth Circuit Court of Appeals found that the particular terms of a mortgage encumbering the Everglades Hotel in Miami did not include the hotel furniture and furnishings. The District Court had

held that the furniture and furnishings were encumbered based upon a belief that "a going concern business' had been mortgaged. The Fifth Circuit, however, said: "If such was the case, their intention was not manifested in the operative portions of the mortgage instrument; nor has it been shown that the parties had such intention."

In the case at bar, the operative portions of the mortgage instruments and subordination agreement are clear and specific. Accordingly, it is ORDERED AND ADJUDGED:

1) That the mortgages here involved encumber all of the equipment and furnishings located upon the subject premises; and

2) That the trustee holds no position with respect to such property prior and superior to the liens of the mortgagees herein.